# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE PEOPLE *ex rel.* John E. W. Wayman, State's Attorney, Petitioner, *vs.* MICHAEL ZIMMER, Sheriff, Respondent.

*Opinion filed October 25, 1911—Rehearing denied Dec. 7, 1911.*

1. HABEAS CORPUS—*writ of habeas corpus must be confined to its legitimate purpose.* The writ of *habeas corpus* is a high prerogative writ, which, when properly issued, supersedes all other writs, and it must therefore be confined to its legitimate office, otherwise a partisan judge may, by usurpation of jurisdiction, work a great wrong to society and the State by discharging offenders lawfully convicted and sentenced to imprisonment.

2. SAME—*writ of habeas corpus cannot be used as a writ of error.* A writ of *habeas corpus* does not operate as a writ of error and cannot be used to review a judgment entered by a court which had jurisdiction of the person and subject matter of the suit wherein the judgment was rendered.

3. SAME—*when court must decline to discharge prisoner.* The jurisdiction of the court to render the judgment upon which the process under which a prisoner is held is based lies at the foundation of a *habeas corpus* proceeding to obtain his discharge, and if it appears from the petition and return in the *habeas corpus* proceeding that the court which rendered such judgment had jurisdiction of the person and subject matter, the court to which the *habeas corpus* petition is addressed should decline, for want of jurisdiction, to discharge the prisoner.

4. SAME—*when order of discharge is void.* If it appears from the petition for *habeas corpus* and the return to the writ that the court which rendered the judgment upon which the process under which the petitioner is held is based had jurisdiction of the person and subject matter, the court to which the petition is addressed has no jurisdiction to enter an order of discharge, and if it does so the order of discharge is void and should be disregarded by the officer to whom it is directed.

5. SAME—*an officer is not protected by void process.* The rule that an officer is protected by process regular on its face applies only where such process is invoked for the protection of an officer who has acted under such process without notice of its invalidity and in good faith, and does not apply where the officer has notice that such process is void and has been issued by a court which had no jurisdiction to issue the same.

ORIGINAL petition for *mandamus.*

W. H. STEAD, Attorney General, and JOHN E. W. WAYMAN, State's Attorney, (THOMAS MARSHALL, ZACH HOFHEIMER, and GEO. W. MILLER, of counsel,) for petitioner.

JOHN STELK, for respondent.

DANIEL DONAHOE, and JAMES HARTNETT, for Edward S. Gard.

Mr. JUSTICE HAND delivered the opinion of the court:

This is an original petition filed in this court in the name of the People, upon the relation of the State's attorney of Cook county, praying for a writ of *mandamus* to compel Michael Zimmer, as sheriff of Cook county, to apprehend Edward S. Gard and deliver said Gard to the jailor of Cook county, and to imprison and hold said Gard in accordance with the terms of a certain order theretofore entered by Judge Scanlan, one of the circuit judges of Cook county, while sitting in a branch of the criminal court of said Cook county, by which order the said Gard had been adjudged guilty of a contempt of court and ordered to be confined

in the county jail of said Cook county for the period of sixty days. An answer has been filed by respondent, and the relator has interposed a general demurrer to said answer, and briefs and arguments have been filed by the relator and by the respondent. By permission of court Gard has filed a brief in this case although leave was denied him to file an answer.

The facts involved in this case are not in dispute, and are, in brief, as follows: A day or two prior to the 21st day of November, 1910, one William Schubert was arrested by the police in the city of Chicago on suspicion of having committed the crime of robbery and was confined at one of the police stations in the said city without a formal complaint having been lodged against him with a committing magistrate, while the charge against him was being investigated by the police. On the 21st day of November a writ of *habeas corpus* for the discharge of Schubert was sued out before Judge Scanlan, one of the circuit judges of the said county, who was then holding a branch of the criminal court of said county. Schubert was produced in court by Edward S. Gard, a police officer of the city of Chicago, in response to the command of the writ, who stated orally to the court that Schubert was being held by the police on the charge of robbery and asked that a hearing in the *habeas corpus* case be postponed to give the police an opportunity to have present at the hearing the prosecuting witness. Judge Scanlan fixed the amount of bail which Schubert should give pending the hearing, but which he was unable to give, and continued the case until November 23. Upon that day, on the case being again called and the prosecuting witness having failed to identify Schubert as the man who had robbed him, Gard and a representative of the State's attorney's office being present, Judge Scanlan in open court inquired of Gard if there were any other charges against Schubert or if there was any reason why he should be held further, and upon Gard informing the judge there were no other charges

against him and there was no reason why he should be further held, an order of discharge was entered by Judge Scanlan discharging Schubert, and Schubert returned with an officer to the jail. As he left the jail Gard re-arrested Schubert upon two warrants which Gard had sworn out of the municipal court of Chicago on November 22, charging him with vagrancy and with living in an open state of adultery, which warrants he had in his possession at the time Schubert was discharged by Judge Scanlan in the *habeas corpus* proceeding. The matter of the re-arrest was immediately brought to the attention of Judge Scanlan, and upon investigating the matter he caused formal proceedings for contempt of court to be instituted against Gard for falsely stating to him, at the time the *habeas corpus* proceeding was disposed of, that there were no other charges against Schubert and that there was no reason why he should not be discharged. Gard appeared in the contempt proceeding, filed a formal answer, and upon a full hearing he was adjudged guilty of contempt of court and ordered committed to the county jail of Cook county for sixty days. Thereupon a certified copy of the order was delivered to the relator, as sheriff of Cook county, and he arrested Gard and confined him in the jail of said Cook county. Within two hours of the entry of the contempt order by Judge Scanlan and the incarceration of Gard in the county jail, Gard was released from imprisonment in the county jail by a writ of *habeas corpus* issued by Judge Petit, one of the circuit judges of Cook county, who, upon Gard being brought before him, admitted him to bail on his own recognizance, and subsequently, on February 11, 1911, entered an order discharging said Gard from imprisonment by virtue of said contempt order.

The petition and return filed in the *habeas corpus* proceeding before Judge Petit showed, upon their face, that the contempt of which Edward S. Gard was found guilty was committed in open court and in the presence of Judge

Scanlan, and that said Gard appeared in the contempt proceeding before Judge Scanlan and filed an answer in the contempt proceeding and was fully heard and was present at the time he was adjudged guilty of contempt,—that is, that Judge Scanlan in the contempt proceeding had jurisdiction of the subject matter of the contempt and of the person of Gard at the time Gard was adjudged to be in contempt of court by Judge Scanlan and committed to the county jail.

Two questions are presented for decision upon this record: First, did Judge Petit have jurisdiction in the *habeas corpus* proceeding before him to discharge Edward S. Gard from the contempt order? And secondly, Gard having been discharged, if his discharge was wrongful, has this court, by *mandamus,* jurisdiction to direct the respondent, as sheriff, to re-arrest Gard and enforce the order in the contempt proceeding against him by imprisoning him in the county jail?

The writ of *habeas corpus* is a high prerogative writ and when properly issued supersedes all other writs, and by reason of that fact it should be confined to its legitimate office, otherwise an ignorant, reckless or partisan judge, by usurpation, may through the writ work a great wrong to society and the State by discharging offenders who have been lawfully convicted and sentenced to imprisonment by other courts while legally exercising co-ordinate jurisdiction with the court granting such discharge. It has never been the office of the writ of *habeas corpus* to operate as a writ of review, and we take it that no well considered case can be found where it has been held that the writ may properly be used to review the judgment of a court where the judgment sought to be reviewed had been rendered by a court which had jurisdiction of the person and subject matter of the suit in which the judgment had been rendered. *Ex parte Smith,* 117 Ill. 63; *People* v. *Allen,* 160 id. 400; *People* v. *Jonas,* 173 id. 316; *People* v. *Murphy,* 212 id.

584; *People* v. *Superior Court,* 234 id. 186; *People* v. *Strassheim,* 242 id. 359; *Martin* v. *District Court,* 37 Colo. 110; *Ex parte Parks,* 93 U. S. 18; *Keizo* v. *Henry,* 211 id. 146; *Harlan* v. *McGourin,* 218 id. 442.

In *Ex parte Smith, supra,* Smith was adjudged guilty of contempt and fined and ordered committed to jail until the fine was paid for refusing to answer questions before a grand jury. He filed a petition for *habeas corpus* in this court. The writ was denied. The court said, among other things (p. 65) : "We regard the petition in this case as a mere attempt to review and set aside a judgment at law for an alleged error in the proceeding where the court clearly had jurisdiction both of the person and subject matter of the suit. This cannot be done. The petition shows that the petitioner was regularly brought before the grand jury as a witness, that he refused to answer certain questions propounded to him, and that the court thereupon imposed a fine upon him. Whether the court was authorized, under the circumstances, to impose the fine was a matter which the law authorized and empowered the court to determine, just as in any other case of alleged contempt. While, for the purposes of the argument, it may be conceded that the court erred in reaching the conclusion it did, nevertheless its right and duty to pass upon the question was clear beyond all question. If the judgment was erroneous, as is claimed, the remedy was the same as in the case of any other erroneous judgment where the right of appeal or writ of error is given. We regard the order directing the defendant to stand committed till the fine and costs were paid in the nature of final process,—a mere means of enforcing the payment of the judgment,—which would have been suspended by any order staying the judgment itself. If, as claimed, the judgment is erroneous, a writ of error was the appropriate remedy, and upon that hypothesis we must assume the reviewing tribunal would, if asked, have made the writ a *supersedeas,*

which would have suspended the order of commitment till the case could be disposed of on the merits."

In *People* v. *Allen, supra,* the petitioner was indicted, tried and convicted in the criminal court of Cook county. While in the penitentiary under sentence he filed an original petition for *habeas corpus* in this court. In that case this court pointed out that the criminal court had jurisdiction of the person and subject matter, and said that while there might be some question in regard to whether the judgment entered was erroneous it was not void, and therefore there was no ground for a writ of *habeas corpus.* The court said that if any error was committed by the trial court in the trial of the cause or in the sentence of the petitioner, that was a question which could be reviewed by a writ of error, but the petitioner had no right to a writ of *habeas corpus.*

In *People* v. *Jonas, supra,* which was an original petition for *habeas corpus* in this court, the petitioner had been fined by a justice of the peace for a violation of an act regulating the practice of medicine and surgery. A *mittimus* was issued by the justice of the peace commanding that unless the petitioner pay the amount of the fine, with costs, etc., he be committed to the common jail of Cook county, and he was taken into custody under this *mittimus.* Petitioner sought to test the constitutionality of this act in the *habeas corpus* proceeding. This court pointed out that the justice of the peace had jurisdiction to hear the case and to render judgment against the petitioner, and in doing so had full authority and jurisdiction to decide all questions involved in the case, including the constitutionality of the statute, and that situation was not changed, the court said, by the fact that the justice court was an inferior one and that its decision of a constitutional question might not be of great authority as a precedent. On page 320 the court said : "The effect of granting writs in cases of this kind would be to allow defendants, in all convictions under ordinances or statutes the validity of which might be questioned, to

come directly to this court by a proceeding in *habeas corpus* instead of appealing or prosecuting writs of error, as the law contemplates. Such a practice contravenes the statute and is not to be permitted. In this case the remedy by appeal was complete and the writ of *habeas corpus* is denied."

In *People* v. *Murphy, supra,* a motion for leave to file a petition for writ of *habeas corpus* was made in this court, and the particular ground for relief set forth in the petition was that the petitioner, Freeman, who was indicted for murder, had not been given a trial within four months after the time of his commitment to jail. The court, in denying the motion, pointed out that the prisoner, to invoke this statute, should demand his release in the trial court, and preserve in the record, by bill of exceptions, the proceedings had upon such application; that if the application be denied it was the right of the prisoner to have the action of the court reviewed as a part of the record when his case should be brought to this court, if at all, by writ of error, and said (p. 588) : "It is not the intent or purpose of the law that mere errors committed or arising out of matters wherein a court is exercising a discretion, as in this case, during the pendency of the trial, and reviewable upon error, shall be reviewed by courts of concurrent jurisdiction, or any court for that matter, under a writ of *habeas corpus.* The writ of *habeas corpus* is not for the purpose of reviewing errors, and is only authorized in those cases where the court has acted without jurisdiction. * * * The contention or view that the circuit court of Cook county is vested with jurisdiction to sit in review of the proceedings of the criminal court cannot for a moment be entertained."

In *People* v. *Superior Court, supra,* one Lipsey was convicted of receiving stolen property and sentenced to the penitentiary. This court reviewed the record of his conviction on writ of error, affirmed the judgment and denied a rehearing. The court's mandate issued, and he was taken to the penitentiary at Joliet to undergo imprisonment in ac-

cordance with the judgment of the criminal court of Cook county. He then filed a petition for a writ of *habeas corpus* in the superior court of Cook county and Judge McEwen ordered the writ to issue. The writ issued and was served upon the warden of the penitentiary, and he made return that he had complied with the writ by delivering the body of Lipsey into the custody of the sheriff of Cook county. The contention on behalf of Lipsey was, that the judgment of conviction was void for the reason that the verdict was insufficient to warrant a judgment of conviction, and amounted, in law, to a verdict of not guilty. An original petition for *certiorari* was filed in this court and a writ issued, in response to which Judge McEwen, on behalf of himself and the superior court, filed a return to the writ setting forth the *habeas corpus* proceedings, and it was held that, after an affirmance of a judgment of conviction by this court, all questions which could have been raised must be considered as having been raised and passed upon, and that the superior court was without jurisdiction to entertain the *habeas corpus* proceedings. In that case, the writ of *habeas corpus* was sought after there had been a review of the record by this court, but with reference to the right of one court to review the records of courts of concurrent jurisdiction where there has been no review of the record by this court, the late Justice Scott, speaking for the court, said (p. 204) : "Nothing said or left unsaid is to be deemed an intimation that the superior court could rightfully have discharged Lipsey on *habeas corpus* if the criminal case had not come to this court and if the verdict was properly the subject of the criticisms leveled against it. The criminal court had jurisdiction of the offense with which Lipsey was charged and had jurisdiction of his person. It had jurisdiction to determine the sufficiency of the verdict and jurisdiction to enter the judgment which it did enter. (*Ex parte Watkins,* 3 Pet. 193.) By the entry of final judgment it adjudicated that verdict to be one which would support a

252 — 2

judgment of conviction in the case. The superior court is of concurrent jurisdiction, only, with the criminal court. Our view of the law with reference to the power of the superior court to discharge a prisoner on *habeas corpus* who is held pursuant to a judgment of the criminal court, which that court had the jurisdiction to enter, may be gleaned from the opinion in *People* v. *Murphy, supra.*"

In *People* v. *Strassheim, supra,* an original petition for writ of *habeas corpus* was filed in this court. The contention urged was that the statute under which the petitioner was sentenced was wholly void. The right to raise that question by *habeas corpus* proceedings was denied. The court said (p. 362) : "These questions which counsel seek to raise concerning the validity of the entire act cannot be raised or considered in this proceeding by *habeas corpus,* since they do not affect the jurisdiction of the criminal court, in which the relator was convicted. The courts have uniformly held, in very numerous cases, that the writ of *habeas corpus* cannot be made to perform the functions of a writ of error or an appeal, and if the relator was sentenced under the provision of a void act that question could properly be raised on a writ of error."

In the *Martin case, supra,* one Moran was tried in a district court of the State of Colorado and convicted of the crime of robbery and sentenced to the penitentiary. He filed a petition for a writ of *habeas corpus* in the district court of another judicial district of that State, and the writ was issued. The sole ground for the allowance of the writ was that the judgment under which he was sentenced was absolutely void because it was not within the power of the court to pronounce the same. He had been sentenced for a term of not more than fourteen years under an indeterminate sentence act which it was claimed did not go into force until after the commission of the robbery, and it was claimed that at the time of the commission of the robbery the penalty was confinement in the penitentiary from three

to fourteen years. The district court, before whom the *habeas corpus* proceedings were heard, discharged the prisoner, apparently for the reason relied upon by him that the judgment under which he was sentenced was absolutely void as rendered under the wrong law. The warden, Martin, filed an application in the Supreme Court of Colorado, as warden of the State penitentiary, for an original writ of *certiorari* to review the action of the district court, and of the judge thereof, in releasing Moran from the penitentiary. It was a case of one court on *habeas corpus* releasing from the penitentiary and discharging from custody a prisoner tried, convicted and sentenced by a district court of another district, both courts being of concurrent jurisdiction. The danger of this practice is well illustrated, for while the Supreme Court allowed the writ of *certiorari* and set aside the judgment of the district court discharging Moran from custody, Moran had been set at liberty under the order of the district court and had left the State. The court pointed out that even if Moran had been sentenced under the wrong statute, the judgment of the court was not void but voidable, and that in any event Moran would have to serve the minimum sentence under the statute which he claimed applied, before he could procure his liberty by *habeas corpus,* if it could then be done. It was pointed out that the sentence complained of could be corrected upon writ of error, and the court said (p. 117): "The district court, in ruling otherwise, clearly exceeded the limit of its jurisdiction in discharging the prisoner, and its judgment for that reason should be set aside. For another reason that court exceeded its jurisdiction in the premises. The sentence under which the prisoner was in custody was pronounced by the district court of Otero county. That court had jurisdiction of the crime and of the person of the defendant and the power to pronounce sentence. The district court of Arapahoe county is a court of concurrent jurisdiction, only. It has no power, under the constitution or the statutes of this State, to review

or supervise, by *habeas corpus,* the judgment of the district court of another judicial district. This was clearly intimated by Mr. Justice Elliott in his concurring opinion in *Cooper* v.. *People,* 13 Colo. 237. He there said that, notwithstanding the fact that our statute confers jurisdiction in *habeas corpus* cases upon district courts and district judges, yet in the nature of things there must be some limitation to the exercise of such power, else the unseemly spectacle might be presented of one district court releasing prisoners committed by another district court, or even by the Supreme Court itself. This is precisely what the district court of the second judicial district has assumed to do in this case, and it was beyond its jurisdiction to do so. * * * For the foregoing reasons we conclude that the district court of the second judicial district in discharging the prisoner on *habeas corpus* exceeded the limits of its jurisdiction, and proceeded in palpable violation of the provisions of the *habeas corpus* statute and the previous decisions of this court."

In *Keizo* v. *Henry, supra,* Keizo was indicted for murder by a grand jury of the Territory of Hawaii. He was found guilty and sentenced to death. The case came to the Supreme Court of the United States by a writ of error directed to a judgment of the Supreme Court of the Territory of Hawaii discharging a writ of *habeas corpus* and remanding the prisoner to the custody of the sheriff. The point urged by the prisoner was that certain members of the grand jury who returned the indictment against him were not citizens of the United States, as required by the law. There was an affirmance of the judgment of the Supreme Court of the Territory. Among other things in the opinion the court said (p. 148) : "But no court may properly release a prisoner under conviction and sentence of another court unless for want of jurisdiction of the cause or person, or for some other matter rendering its proceedings void. Where a court has jurisdiction, mere errors which have

been committed in the course of the proceedings cannot be corrected upon a writ of *habeas corpus,* which may not in this manner usurp the functions of a writ of error. [Citing authorities.] These well settled principles are decisive of the case before us. Disqualifications of grand jurors do not destroy the jurisdiction of the court in which an indictment is returned if the court had jurisdiction of the cause and of the person, as the trial court had in this case. [Citing authorities.] The indictment, though voidable, if the objection is seasonably taken, as it was in this case, is not void.  *  *  *  That court has the authority to decide all questions concerning the constitution, organization and qualification of the grand jury, and if there are errors in dealing with these questions, like all other errors of law committed in the course of the proceedings, they can only be corrected by writ of error."

In *Ex parte Parks, supra,* which was a *habeas corpus* proceeding where the petitioner had been convicted of the crime of forgery, it was contended that the act for which he was convicted (forgery) was not a crime under the Federal statutes, and the court held that question could not be inquired into on *habeas corpus.* The reason is manifest. The trial court having jurisdiction of the subject matter and the person, had the power to decide whether the crime of forgery could be committed under the Federal statutes, and the conviction and sentence of the prisoner was a decision by the court of that question. If erroneous, the law provided a method for its review, and the method was not by *habeas corpus.* Mr. Justice Bradley, speaking for the court, said: "But the question whether it was or was not a crime within the statute was one which the district court was competent to decide. It was before the court and within its jurisdiction.  *  *  *  Whether an act charged in an indictment is or is not a crime by the law which the court administers (in this case the statute law of the United States) is a q[uestion] which has to be met at almost every stage of crim[inal]

ceedings,—on motions to quash the indictment, on demurrers, on motions to arrest judgment, etc. The court may err, but it has jurisdiction of the question. If it errs, there is no remedy after final judgment unless a writ of error lies' to some superior court,—and no such writ lies in this case. It would be an assumption of authority for this court, by means of the writ of *habeas corpus,* to review every case in which the defendant attempts to controvert the criminality of the offense charged in the indictment." Again, on page 23: "But in the case before us the district court had plenary jurisdiction, both of the person, the place, the cause, and everything about it. To review the decision of that court by means of the writ of *habeas corpus* would be to convert that writ into a mere writ of error and to assume an appellate power which has never been conferred upon this court."

In *Harlan* v. *McGourin, supra,* a circuit court of the United States refused to release the petitioners upon writs of *habeas corpus,* and under the Federal statutes appeals were taken to the United States Supreme Court. It was contended that there was absolutely no evidence to sustain the conviction of the petitioners, and that upon that ground they should have been discharged, but the court, speaking through Mr. Justice Day, said (p. 448): "The attack is thus not upon the jurisdiction and authority of the court to proceed to investigate and determine the truth of the charge, but upon the sufficiency of the evidence to show the guilt of the accused. This has never been held to be within the province of a writ of *habeas corpus.* Upon *habeas corpus* the court examines only the power and authority of the court to act,—not the correctness of its conclusions."

In *In re Gregory,* 219 U. S. 210, an interesting and instructive opinion was written by Mr. Justice Hughes on behalf of all the members of the court. It was an original for writ of *habeas corpus* to inquire into a detention a conviction in the police court of the District of

Columbia of engaging in a gift enterprise business within the district. The rule was discharged and the petition dismissed. Said the court: "The only question before us is whether the police court had jurisdiction. A *habeas corpus* proceeding cannot be made to perform the function of a writ of error, and we are not concerned with the question whether the information was sufficient or whether the acts set forth in the agreed statement constituted a crime,—that is to say, whether the court properly applied the law,—if it be found that the court had jurisdiction to try the issues and to render the judgment." Numerous cases are then cited. The court then cites the opinion of Mr. Justice Day in *Harlan* v. *McGourin, supra,* and quotes from it with approval. Other cases are approvingly noted, including *Ex parte Parks, supra.* The opinion concludes thus: "In hearing this application this court does not sit to review the correctness of the conclusion of the police court as to the violation of the statute by the petitioner, or of the decision of the court of appeals of the district as to the sufficiency of the information filed against him. The question here is not one of guilt or innocence, but simply whether the court below had jurisdiction to try the issues; and as we find that the statutes conferred that jurisdiction the application for a writ of *habeas corpus* must be denied."

Section 21 of the chapter on *habeas corpus,* (Hurd's Stat. 1909, p. 1232,) contains, among other things, the following provision: "No person shall be discharged under the provisions of this act, if he is in custody, * * * by virtue of a final judgment or decree of any competent court of civil or criminal jurisdiction, or of any execution issued upon such judgment or decree, unless the time during which such party may be legally detained has expired." Section 22 of the same act provides: "If it appear that the prisoner is in custody by virtue of process from any court legally constituted, he can be discharged only for some of the following causes: (1) Where the court has exceeded the limit

of its jurisdiction, either as to the matter, place, sum or person; (2) where, though the original imprisonment was lawful, yet, by some act, omission or event which has subsequently taken place, the party has become entitled to his discharge; (3) where the process is defective in some substantial form required by law; (4) where the process, though in proper form, has been issued in a case or under circumstances where the law does not allow process or orders for imprisonment or arrest to issue; (5) where, although in proper form, the process has been issued or executed by a person either unauthorized to issue or execute the same, or where the person having the custody of the prisoner under such process is not the person empowered by law to detain him; (6) where the process appears to have been obtained by false pretense or bribery; (7) where there is no general law, nor any judgment, order or decree of a court to authorize the process if in a civil suit, nor any conviction if in a criminal proceeding. No court or judge, on the return of a *habeas corpus,* shall, in any other matter, inquire into the legality or justice of a judgment or decree of a court legally constituted."

It is manifest from the foregoing decisions and statute that when a petition is presented to a judge for a writ of *habeas corpus* to discharge a prisoner held under judicial process, the question of the jurisdiction of the court to render the judgment, which is the foundation of the process by which the prisoner is held, lies at the very threshold of the *habeas corpus* proceeding, and if it appears from the petition, return, or in any other legitimate manner, that the court that rendered the judgment by virtue of which the process issued from which discharge is sought had jurisdiction of the person of the prisoner and of the subject matter of the suit in which the judgment was rendered, then the judge to whom the petition is presented should decline, for lack of jurisdiction, to discharge the prisoner, as if the court that rendered the judgment upon which the process

issued by which the prisoner is held had jurisdiction of the person of the prisoner and the subject matter of the suit, then the case of the prisoner is not one for discharge upon writ of *habeas corpus* but for review by appeal or on writ of error, as no court upon *habeas corpus* can sit as a court of review to re-try cases which have been legally decided upon full jurisdiction by other courts, especially other courts of concurrent jurisdiction. In considering this question in *People* v. *Superior Court, supra,* on page 198 it was said: "In this case it appeared from the face of the petition for a writ of *habeas corpus* that the question thereby raised had, as a matter of law, been adjudicated against Lipsey by this court when his case was here on writ of error, and it therefore appeared from the petition that Lipsey, so far as imprisonment by virtue of that judgment was concerned, could not by the superior court, or any judge thereof, be discharged, admitted to bail or otherwise relieved, and for that reason the writ should not have issued. It is contended, however, that even if this be true the superior court was not without jurisdiction; that, having general jurisdiction in *habeas corpus,* the court had the power and authority to issue the writ even though the prisoner could not lawfully be discharged. We have held that jurisdiction is authority to hear and decide a cause, and that it does not depend upon the correctness of the decision made. (*People* v. *Talmadge,* 194 Ill. 67.) 'Jurisdiction of the tribunal does not depend upon actual facts alleged, but upon authority to determine the existence or non-existence of such facts and to render judgment according to its findings.' (Bailey on Jurisdiction, sec. 2.) The language last quoted seems to us to be accurate. Applying that statement of the law to this petition for *habeas corpus,* it is apparent that the petition conferred no jurisdiction upon the superior court. The fact alleged was that the judgment in the criminal case was void. It also appeared from the petition, as a matter of law, that this court, upon a writ of error, had determined that alleged

fact to be untrue and had determined that the judgment was valid. That being the case, the superior court was without authority to determine the existence or the non-existence of the alleged fact. That question had already been determined by a tribunal whose finding the superior court had no authority to review. The superior court was, therefore, without jurisdiction in the premises and without right or power to order the issuance of the writ.—*People* v. *Murphy*, 212 Ill. 584; *In re Williams*, 10 L. R. A. (N. S.) 1129; *Commonwealth* v. *Lecky*, 1 Watts, 67; *State* v. *Dobson*, 135 Mo. 1; *Martin* v. *District Court*, 37 Colo. 110; *Doyle* v. *Commonwealth*, 107 Pa. St. 20."

It is clear from the petition and return that Judge Scanlan had jurisdiction to commit Edward S. Gard for contempt. Those jurisdictional facts appear on the face of the petition and return. Judge Petit was without jurisdiction to enter the order of discharge, and the order of discharge being beyond his jurisdiction to enter, was absolutely void. In the *Murphy case* we thus express our view upon this subject (p. 589) : "The contention or view that the circuit court of Cook county is vested with jurisdiction to sit in review of the proceedings of the criminal court can not for a moment be entertained. If the circuit court had assumed jurisdiction and granted the writ * * * it would have been a nullity for lack of jurisdiction in the court and could avail the relator nothing. The order of the circuit court would neither warrant the discharge of the relator nor protect him against re-arrest. It is as essential that a court have jurisdiction in a proceeding for writ of *habeas corpus* as any other cause that may come before it."

It is clear, in view of the holding of the courts and the statute of this State, that the order of discharge of Edward S. Gard entered by Judge Petit was a usurpation of judicial power, and that the order entered by Judge Scanlan in the contempt proceedings was not annulled thereby,

but possesses to-day the same vitality it possessed upon the day upon which it was entered.

It is strenuously contended on behalf of the respondent that he was not bound to hold Edward S. Gard under the order entered by Judge Scanlan in the contempt proceedings in defiance of the subsequent order entered in the *habeas corpus* proceedings by Judge Petit, as it is said it was not his duty, as sheriff, to stop and inquire whether Judge Petit had jurisdiction to issue the order of discharge or not, but that he had the right to assume the order of discharge was a valid order and to obey it, and he has in support of this position cited a large number of authorities to the effect that an officer is protected by process regular upon its face. We have no quarrel with the authorities cited by the respondent upon that proposition. The rule therein announced, however, only applies where process regular upon its face is invoked for the protection of an officer who has acted under such process without notice of its invalidity and in good faith, and does not apply where the officer has notice that the process under which he is acting is void and has been issued by a court that is without jurisdiction to issue the same. (*Tefft* v. *Ashbaugh,* 13 Ill. 602; *Gorton* v. *Frizzell,* 20 id. 292; *Tuttle* v. *Wilson,* 24 id. 553.) In the *Tefft case, supra,* on page 603, it was said: "It appeared that Heath arrested the plaintiff by virtue of a *capias ad satisfaciendum* and placed him in the custody of the jailor. This proof showed, *prima facie,* that he was acting within the limits of his official duty. The writ protected him unless it appeared on its face that it was issued by a court having no jurisdiction of the person of the plaintiff, or unless he had notice in some other way that it was issued without authority of law." And in the *Gorton case, supra,* on page 295, it was said: "Being void [meaning the process] the defendant could not have justified under it in an action against him for false imprisonment. The sheriff had notice, by the recital of the affidavit

set out in the writ, that the justice of the peace had no jurisdiction or power to issue it and that he could not execute it without being a trespasser. An officer cannot justify under a void writ." In the *Tuttle case, supra,* on page 561, it was said: "The rule that a ministerial officer is protected in the execution of process issued by a court or officer having jurisdiction of the subject matter and of the process, if it be regular on its face and does not disclose a want of jurisdiction, is a rule of protection, merely, and beyond that confers no right. It is held to be personal to the officer himself and affords no shelter to the wrongdoer, under color of whose process, if it be void, the officer is called upon to act."

The order of discharge entered in the *habeas corpus* proceeding by Judge Petit was absolutely void and the petition and return in the *habeas corpus* proceeding showed it was void. The respondent would therefore have been justified in disobeying it and in holding Edward S. Gard. The respondent was, however, between two fires. The order entered by Judge Scanlan required him to hold and imprison Gard, and the order of Judge Petit required him to discharge Gard. He was therefore bound to act,—that is, obey one order and disobey the other,—and he was bound to act at his peril, and acting, undoubtedly, upon the best light he had, he determined to obey what subsequently proved to be the void order, and now that it has been held by this court (the court of last resort) that the order entered by Judge Petit is void, that order no longer stands in the way of the execution of the order entered by Judge Scanlan. While the order entered by Judge Petit had the effect to delay the enforcement of the law for a time, it will not have that effect longer.

The writ of *mandamus* will issue according to the prayer of the petition.                  *Writ ordered.*